IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEITH CAMPBELL,                        )
                                       )
                 Petitioner,           )
                                       )
        v.                             )    C.A. No. 19-1115 (MN)
                                       )
ROBERT MAY, Warden, and ATTORNEY       )
GENERAL OF THE STATE OF                )
DELAWARE,                              )
                                       )
                 Respondents.          )

**<u>MEMORANDUM OPINION</u>**


Keith L. Campbell – *Pro se* Petitioner.

Sean P. Lugg, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorneys for Respondents.


August 4, 2022
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Keith Campbell ("Petitioner"). (D.I. 1). The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 19; D.I. 22). For the reasons discussed, the Court will deny the Petition as barred by the one-year limitations period prescribed in 28 U.S.C. § 2244 and, alternatively, as meritless and procedurally barred.

I.   **BACKGROUND**

On November 7, 2014, Detective Hector Garcia of the New Castle County Police Department responded to South Street in New Castle, Delaware to investigate a shooting. (D.I. 18-2 at 4-5). By the time Detective Garcia arrived at the shooting scene, both individuals had been transported to Christiana Care Hospital for treatment. Detective Garcia met with the female shooting victim at the hospital and learned that, while the female and male victim sat in a car on South Street, a dark colored sport utility vehicle drove past them and parked on the opposite side of the street. (*Id.*). "[T]wo thin black males exit[ed] the [vehicle;] [t]he driver was wearing a gray hooded sweatshirt and the passenger a black one. They were both wearing black pants." (D.I. 18-2 at 5). "[T]he ma[le] in the gray hooded sweatshirt point[ed] a gun in their direction and began to shoot into their vehicle." (*Id.*). Bullets struck both the female and male victims, and the shooters fled the scene. (*Id.* at 4-5).

On November 10, 2014, the female victim's mother informed police that she received information that the shooters fled in a "black in color Ford Explorer with a partial Delaware Registration number PC31." (D.I. 18-2 at 5). On November 12, 2014, Detective Garcia learned that Petitioner had "incriminated himself as being the one involved in 'the hit.'" (*Id.* at 6). Detective Garcia's investigation revealed that on November 8, 2014, the day after the shooting, police initiated a traffic stop of a black Ford Explorer displaying Delaware Registration PC116369

driven by Petitioner. (*Id*.). Petitioner told the officer who stopped him that he had "'just purchased' the vehicle." (*Id*.). Detective Garcia obtained "a search warrant for the residence, vehicle and body of" Petitioner, and executed those warrants on November 14, 2014. (*Id*. at 7). Petitioner was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1996) and then agreed to speak with Detective Garcia. (D.I. 18-2 at 7). Although Petitioner initially denied involvement in the shooting, he subsequently informed Detective Garcia that, on November 7, 2014, he agreed to help Markevis Stanford and described how he picked up Stanford and an unknown black male in the city of Wilmington in his black Ford Explorer. (*Id*. at 7-8). The unknown black male gave Petitioner a 9 mm handgun. (*Id*. at 8). Petitioner then followed Stanford's directions and drove to the scene of the shooting. (*Id*.). Petitioner stated he remained in his car while Stanford and the unknown black male exited his car and began shooting and that when the shooting concluded, he drove Stanford and the unknown black male back to the city of Wilmington and dropped them off. (*Id*.).

On January 20, 2015, a New Castle County grand jury returned an indictment charging Petitioner with two counts of attempted first degree murder, two counts of possession of a firearm during the commission of a felony ("PFDCF"), two counts of possession of a firearm by a person prohibited ("PFBPP"), and one count of first degree conspiracy. (D.I. 19 at 3).

> On October 6, 2015, [Petitioner] pled guilty to Assault First Degree, Assault Second Degree, Conspiracy Second Degree, and one count of Possession of a Firearm by a Person Prohibited (the "PFBPP Charge"). In the Plea Agreement, the State agreed to cap its Level 5 recommendation at 15 years or to recommend 25 years of Level 5 incarceration suspended after 15 years, followed by decreasing levels of probation. Prior to accepting this plea, [Petitioner] rejected an offer from the State that involved [Petitioner] pleading guilty to several felonies and the State's recommendation to cap the time to be served at Level 5 at 10 years.

> On that same date, [Petitioner] also signed a Truth-in-Sentencing Form acknowledging that he was freely and voluntarily pleading guilty to the charges listed in the Plea Agreement, that he had not been promised anything that was not stated in the written Plea Agreement, and that no one threatened or forced him to enter the plea.  [Petitioner] also acknowledged that by pleading guilty he was waiving the right to a trial, to question witnesses, and if convicted, to file an appeal to the Delaware Supreme Court with the assistance of a lawyer.  Further, [Petitioner] acknowledged that based on the totality of the charges to which he was pleading guilty, the consecutive maximum sentence could be 50 years.
>
> [Petitioner] later filed two Motions to Withdraw Guilty Plea. On April 21, 2016, the [Superior] Court denied the motions but agreed to reduce the [Petitioner's] minimum mandatory time for the PFBPP Charge to 5 years.
>
> \*                    \*                    \*
>
> [Petitioner] was sentenced on June 7, 2016 to a total of twelve (12) years at Level 5, followed by decreasing levels of probation. Included within the sentence, [Petitioner] received five (5) years at Level 5 for the PFBPP Charge.

*State v. Campbell*, 2017 WL 590317, at \*2 (Del. Super. Ct. Feb. 13, 2017).  Petitioner did not appeal his convictions or sentence.

On July 8, 2016, Petitioner filed a motion for reduction of sentence.  The Superior Court denied the motion for reduction of sentence on October 20, 2016.  (D.I. 19 at 5).

Petitioner filed a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on December 5, 2016.  (D.I. 19 at 5).  On February 13, 2017, a Superior Court Commissioner recommended that Petitioner's Rule 61 motion be denied.  *See Campbell*, 2017 WL 590317, at \*4.  On October 27, 2017, the Superior Court adopted the Report and Recommendation and denied Petitioner's Rule 61 motion.  (D.I. 18-5).  Petitioner appealed, and the Delaware  Supreme Court dismissed the appeal on January 19, 2018 for being

untimely.  *See Campbell v. State*, 179 A.3d 276 (Table), 2018 WL 500130, at *2 (Del. Jan. 19, 2018).

Petitioner filed a second Rule 61 motion on July 12, 2018.  *See State v. Campbell*, 2020 WL 3002957, at *1 (Del. Super. Ct. June 4, 2020).  On August 16, 2018, a Superior Court Commissioner recommended that Petitioner's second Rule 61 motion be summarily dismissed. *See State v. Campbell*, 2018 WL 3954253, at *3 (Del. Super. Ct. Aug. 16, 2018).  The Superior Court adopted the Report and Recommendation on September 10, 2018 and dismissed Petitioner's second Rule 61 motion.  (D.I. 18-13).  Petitioner appealed that decision, but voluntarily dismissed his appeal on December 6, 2018.  (D.I. 18-1 at 13, Entry No. 86; D.I. 19 at 6).

On June 7, 2019, Petitioner filed a motion to modify his sentence followed by a motion to review sentence on July 16, 2019.  (D.I. 18-1 at 13-14, Entry Nos. 89, 90, 92; D.I. 19 at 6).  The Superior Court denied both motions on October 31, 2019, and Petitioner did not appeal that decision.  (*Id.*).

On January 27, 2020, Petitioner filed his third Rule 61 motion, which the Superior Court denied as successive pursuant to Rule 61(d)(2) on August 25, 2020.  (D.I. 18-1 at 14-15, Entry Nos. 93, 98, 104); *see Campbell v. State*, 247 A.3d 259 (Table), 2021 WL 450993, at *13 (Del. Feb. 8, 2021).  The Delaware Supreme Court affirmed the Superior Court's decision on February 8, 2021.  *See Campbell*, 2021 WL 450993, at *1.

On October 5, 2021, Petitioner filed a Rule 35 motion for correction of illegal sentence, followed by a motion to withdraw his guilty plea on November 9, 2021.  (D.I. 18-1 at 16, Entry Nos. 109, 111; D.I. 19 at 7).  The Superior Court denied both motions on January 12, 2022, and Petitioner appealed.  (D.I. 18-1 at 16, Entry No. 113; D.I. 19 at 7).  The Delaware Supreme Court

affirmed the Superior Court's decision on April 28, 2022.  *See Campbell v. State*, 2022 WL 1278996, at *2 (Del. Apr. 28, 2022).

Meanwhile, on June 23, 2019, Petitioner filed in this Court a federal habeas Petition asserting three grounds for relief: (1) Petitioner is actually innocent as demonstrated by exculpatory cell phone records obtained on June 20, 2018 and a June 2019 article in the Delaware New Journal (D.I. 1 at 5); (2) the Superior Court violated Petitioner's due process rights by refusing to allow him to review the evidence within the State's discovery (D.I. 1 at 7); and (3) defense counsel provided ineffective assistance by advising Petitioner to accept the plea agreement despite "knowledge of exculpatory evidence" and the weaknesses of the State's case (D.I. 1 at 8).[1]

## II.   <u>ONE YEAR STATUTE OF LIMITATIONS</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

---

[1]   Although Petitioner's Supplemental Memorandum asserts that his argument concerning his "newly discovered evidence of actual innocence" (*i.e.*, the cell site location table and 2019 Delaware News Journal article) is not offered "as an independent constitutional claim, but as a basis upon which [he] may have an independent constitutional claim considered on the merits," (D.I. 12 at 7), the Supplemental Memorandum also presents the actual innocence argument as a freestanding claim.  Thus, the Court will treat Petitioner's actual innocence argument as both a freestanding claim and as an attempt to establish a gateway claim of innocence to excuse any time or procedural bar.

> recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling, which, when applicable, may extend the filing period. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling). A petitioner may also be excused from failing to comply with the limitations period by making a gateway showing of actual innocence. *See Wallace v. Mahanoy*, 2 F. 4th 133, 151 (3d Cir. 2021) (actual innocence exception).

Petitioner does not assert any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Consequently, the Court concludes that the one-year period of limitations began to run when Petitioner's convictions became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the time period allowed for seeking direct review with the state's highest court. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Here, the Superior Court sentenced Petitioner on June 7, 2016, *see Campbell*, 2017 WL 590317, at *2, and he did not appeal that decision. Therefore, Petitioner's judgment of conviction became final on July 8, 2016. Applying the one-year limitations period to that date, Petitioner had until July 10, 2017, to timely file his Petition.[2] *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n.3 (D. Del. Apr. 27, 2015)

---

[2] The limitations period actually ended on July 8, 2017, which was a Saturday. Therefore, Petitioner had until the end of the day on Monday, July 10, 2017 to timely file a federal habeas petition. *See* Fed. R. Civ. P. 6(a)(3).

(AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run). Petitioner, however, did not file the instant Petition until June 13, 2019,[3] approximately two years after that deadline. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled, or Petitioner demonstrates a convincing claim of actual innocence excusing his untimely filing. The Court will discuss each doctrine in turn.

A.      **Statutory Tolling**

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). An untimely post-conviction motion is not considered to be properly filed for § 2244(d)(2) purposes. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414, 417 (2005) (explaining that a state postconviction petition rejected by the state court as untimely is not "properly filed" within the meaning of § 2244(d)(2)). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *See Pace*, 544 U.S. at 424. The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

---

[3]      The Petition is dated June 13, 2019 but was electronically filed on June 17, 2019. Petitioner must have provided the Petition to prison authorities for filing sometime between those two dates. Because the four-day difference in filing does not change the result of this proceeding, the Court adopts the date on the Petition as the date of filing. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

Petitioner filed his first motion for reduction of sentence on July 8, 2016, the same day on which AEDPA's one-year limitations period would have started to run.  The Superior Court denied the motion for reduction of sentence on October 20, 2016, and Petitioner did not appeal that decision.  Therefore, the motion for reduction of sentence tolled the limitations period (and, essentially, delayed the start of the one-year period) until November 21, 2016, when the deadline to appeal the Superior Court's denial expired.[4]

The limitations clock started to run on November 22, 2016, and ran thirteen days until Petitioner filed his first Rule 61 motion on December 5, 2016.  The Superior Court denied the Rule 61 motion on October 27, 2017 and Petitioner did not appeal that decision.  Consequently, the first Rule 61 motion tolled the limitations period from December 5, 2016 through November 27, 2017, which includes the thirty-day appeal period.

The limitations clock started to run again on November 28, 2017.  Although Petitioner filed a notice of appeal from that decision, the Delaware Supreme Court dismissed the appeal as untimely on January 19, 2018.  *See Campbell v. State*, 179 A.3d 276 (Table), 2018 WL 500131, at *3 (Del. Jan. 19, 2018).  Because the Rule 61 appeal was dismissed as untimely, the time during which the appeal was pending does not add any statutory tolling.  As a result, the limitations clock started to run on November 28, 2017, and ran continuously for 226 days until Petitioner filed his second Rule 61 motion on July 12, 2018.  The Superior Court denied the second Rule 61 motion on September 11, 2018.  Even though Petitioner filed an appeal, he voluntarily withdrew the appeal on December 6, 2018.  In these circumstances, the second Rue 61 motion tolled the limitations

---

[4]     As the actual date fell on a weekend, the deadline extended to Monday, November 21, 2016.  *See* Fed. R. Civ. P. 6(a)(3).

period from July 12, 2018 through December 6, 2018.  *See Paskins v. Pierce*, 2017 WL 2267272, at *3 (D. Del. Mary 24, 2017) (limitations clock starts again when appeal voluntarily withdrawn).

A total of 239 days of the limitations period had already expired when the limitations clock started to run again on December 7, 2018.  The limitations clock ran the remaining 126 days without interruption until the limitations period expired on April 12, 2019.[5]  Consequently, the Petition is time-barred by approximately 62 days, unless equitable tolling or the actual innocence exception apply.

**B.    Equitable Tolling and Actual Innocence Exception to the Statute of Limitations**

In 2017, Petitioner was indicted by a federal grand jury on charges unrelated to the convictions underlying the instant Petition.  (D.I. 12 at 3; *see United States v. Campbell*, Crim. Act. No. 17-26-RGA).  During the discovery phase of his federal criminal proceeding before the Honorable Richard G. Andrews, Petitioner's defense counsel in that proceeding discovered that Petitioner's cell phone records had been sealed from 2014 to March 1, 2018.  (D.I. 12 at 3). Petitioner received his cell phone records on June 20, 2018, at which time defense counsel in his federal criminal proceeding created a table listing the cell site location information in chronological order ("cell site location table").  Referencing the cell phone records and cell site location table, Petitioner argues that  the "crime was being committed somewhere in between 9:50 pm and 10:00" and cell tower 353-3, which was relevant in his federal criminal proceeding, "puts [Petitioner] in the area of his father's house located on Vandever Avenue in Wilmington, DE,

---

[5]     None of the motions filed by Petitioner after April 12, 2019 have any statutory tolling effect because they were filed after the expiration of the limitations period.  Those motions included: the motion to modify sentence filed on June 7, 2019, the motion for review of sentence filed on July 16, 2019, the third Rule 61 motion filed on January 27, 2020, a Rule 35 motion for correction of illegal sentence filed on October 5, 2021, and a motion to withdraw his guilty plea filed on November 9, 2021.

19802.  This location is 15 to 20 minutes away from where the crime took place [. . .] in New Castle, Delaware, making it impossible for [Petitioner] to have been the shooter of the crime he was convicted of."  (D.I. 22 at 2-3).  Petitioner also asserts that a June 23, 2019 article in the Delaware News Journal demonstrates that Markevis Stanford shot the victim, not Petitioner. (D.I. 12 at 8-9).  According to the article, a witness in an unrelated Delaware state criminal proceeding testified that someone named Stanford shot the victim Oliver in 2015.  (D.I. 12-1 at 65).

Relying on this background information, Petitioner contends that: (1) the limitations period should be equitably tolled through June 20, 2018 because that is the date on which he received the formerly sealed cell phone records and cell site location table he believes demonstrate his actual innocence; and (2) the formerly sealed cell phone records, the cell site location table created by his federal defense counsel, and the 2019 article in the Delaware News Journal demonstrate his actual innocence and, therefore, provide a gateway for the consideration of his time-barred claims. Petitioner's arguments are unavailing.

### 1.    Equitable tolling

AEDPA's one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50.  With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect.  *Id.* at 651-52.  As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline."  *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011).  An extraordinary circumstance will only warrant equitable tolling if there is "a causal

10

connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013); *see also Wallace v. Mahanoy*, 2 F.4th 133, 144 (3d Cir. 2021) (reiterating that "the relevant inquiry for purposes of assessing extraordinary circumstances is "how severe an obstacle [the circumstance] creates with respect to meeting AEDPA's one-year deadline."). Moreover, "if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Brown v. Shannon,* 322 F.3d 768, 773 (3d Cir.2003). The burden is on the petitioner to prove that he has been reasonably diligent in pursuing his rights. *See Urcinoli v. Cathel,* 546 F.3d 269, 277 (3d Cir. 2008).

Contrary to Petitioner's implicit argument, the fact he did not receive his formerly sealed cell phone records and cell site location table until June 20, 2018 does not constitute an "extraordinary circumstance" for equitable tolling purposes. Petitioner's Supplemental Memorandum indicates that Petitioner knew his records were sealed during the pre-trial stages of the Delaware criminal proceeding at issue here, because the Supplemental Memorandum acknowledges the existence of a March 17, 2015 "Stipulation and Order" which provided that the "State of Delaware agrees to produce to defense counsel copies of all police **reports and other materials relevant to the prosecution of the above referenced criminal matter** redacted only of identifying information" (D.I. 18-4 at 87) (emphasis added). (D.I. 22 at 4). Petitioner's Supplemental Memorandum also acknowledges that the sealed cell phone records were available prior to June 20, 2018, because he argues: "Had counsel investigated the cellphone records, he would have seen that they were sealed. **Available but sealed**. Counsel could have then filed the

necessary motions so that at the very least, a stipulated order could be arranged by both parties and counsel would [have been] able to make a successful defense for Petitioner proving his innocence." (D.I. 12 at 12) (emphasis added).  Petitioner explains that he asked "his counsel for discovery but was denied.  It was one of the many reasons [Petitioner] filed his first motion to withdraw his guilty plea [in November 2015]." (D.I. 22 at 4; *see* D.I. 18-4 at 90-91).

Distilled to its core, Petitioner's actual argument appears to be that the statute of limitations should be equitably tolled due to defense counsel's alleged ineffective assistance for failing to request copies of the sealed cell phone records.  The Supreme Court has recognized that an attorney's egregious error or neglect may constitute an extraordinary circumstance for equitable tolling purposes.  *See Holland*, 560 U.S. at 635–54.  An "egregious error" includes instances where an attorney fails to file an appeal after an explicit request from the petitioner, *see Velazquez v. Grace*, 277 F. App'x 258 (3d Cir. 2008), "affirmatively deceives the petitioner about filing a direct appeal," or "persistently neglects the petitioner's case."  *Schlueter v. Varner*, 384 F.3d 69, 76–77 (3d Cir. 2004).  Defense counsel's failure to seek copies of the sealed cell phone records – either pursuant to the terms of the aforementioned Stipulation and Order or as a standard act an attorney should complete during the course of representing a defendant – does not fall within the aforementioned "egregious error" categories amounting to an extraordinary circumstance for equitable tolling purposes.  *See Holland*, 560 U.S. at 651–52 ("We have previously held that a garden variety claim of excusable neglect such as a simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling.").  In addition, given Petitioner's admission that he knew as early as 2015 that defense counsel did not seek to investigate additional discovery during his state criminal proceeding, Petitioner cannot demonstrate that counsel's

alleged ineffective assistance actually prevented him from filing a habeas petition prior to June 13, 2019.

Further, even if the sealed evidence mentioned in the aforementioned Stipulation and Order did not include Petitioner's cell phone records that were unsealed in March 2018, and even if the State was unaware of the cell phone data evidence under seal in Petitioner's federal criminal proceeding, the fact that Petitioner's Assistant Federal Public Defender filed a motion on October 16, 2017 to stay Petitioner's federal criminal proceeding on the basis of a then-pending United States Supreme Court case involving the same question of law concerning a warrantless seizure of cell tower records demonstrates that Petitioner knew about the existence of the sealed cell phone records earlier than March or June 20, 2018.  (*See* D.I. 23 in *Campbell*, Crim. A. No. 17-26-RGA). In short, the dates of either or both of these filings – November 2015 for Petitioner's first motion to withdraw his guilty plea and/or the October 2017 motion to stay his federal criminal proceeding – demonstrate that Petitioner knew about the existence of the instant cell phone data earlier than March 2018 (when the cell phone records were unsealed) or June 20, 2018 (the date on which the unsealed records were provided to Petitioner).  Given these circumstances, the Court concludes that Petitioner has failed to demonstrate the necessary causal relationship between the alleged extraordinary circumstance of defense counsel's actions and/or the fact that he did not receive copies of his formerly sealed cell phone records until June 2018 and his late filing of the instant Petition.

To the extent Petitioner's late filing of the Petition was due to his own ignorance of the law or the result of his miscalculation regarding the one-year filing period, such factors do not warrant equitably tolling the limitations period.  *See Taylor v. Carroll*, 2004 WL 1151552, at *5-

6 (D. Del. May 14, 2004).  Thus, the Court concludes that that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented.

### 2.  Gateway Claim of Actual innocence

Alternatively, Petitioner contends that he should be excused from complying with the statute of limitations because he is actually innocent.  He argues that the cell phone records and/or cell site location table created by his federal defense counsel (D.I. 12-1 at 52-58) and the 2019 article in the Delaware News Journal (D.I. 12-1 at 63-65), demonstrate his actual innocence and that he would not have entered a guilty plea if defense counsel had obtained the cell phone/cell site location records (D.I. 1 at 13; D.I. 22 at 2).

A credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period.  *See McQuiggin v. Perkins*, 569 U.S 383, 392 (2013); *Wallace*, 2 F. 4th at 150-151.  A petitioner satisfies the actual innocence exception by (1) presenting new, reliable evidence of his innocence; and (2) showing "by a preponderance of the evidence" that "a reasonable juror would have reasonable doubt about his guilt[] in light of the new evidence." *Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021).  The Supreme Court and the Third Circuit have not defined "new evidence" in the context of the actual innocence gateway.  Although the Third Circuit has "suggested that new evidence generally must be newly discovered" and "unknown to the defense at the time of trial," this definition of "new evidence" does not apply when the "underlying constitutional violation claimed is ineffective assistance of counsel premised on a failure to present such evidence." *Reeves v. Fayette SCI*, 897 F.3d 154, 164 (3d Cir. 2018).  Instead, "when a petitioner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for purposes of the *Schlup* actual innocence gateway." *Id*.  Although there is no diligence requirement for such actual

innocence/ineffective assistance of counsel claims, "a court may consider how the timing of the habeas petition bears on the probable reliability of the 'new' evidence." *Wallace*, 2 F.4th at 152.

The Supreme Court and the Third Circuit also have not articulated a specific standard for determining whether new innocence-gateway evidence is reliable, but they have provided helpful guideposts.  Broadly, three examples of reliable evidence are "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

As Petitioner presents his "newly discovered evidence" argument as part of an ineffective assistance of counsel argument, the Court will follow the rule articulated in *Reeves* and view the cell phone records, cell site location table, and the June 2019 News Journal article as "new" evidence to be evaluated under the equitable exception for actual innocence allegations.  Nevertheless, the Court is not persuaded that these items constitute "exculpatory scientific evidence" or "critical physical evidence" sufficient to establish a gateway claim of innocence under the *McQuiggin/Schlup* standard.  As an initial matter, the Court notes that, although Petitioner asserts that he would not have entered a guilty plea if defense counsel had uncovered the cell phone records and the information contained in the cell site location table, he does not actually assert that he is innocent of the crimes to which entered a guilty plea.  Moreover, none of the evidence Petitioner points to establishes his innocence.  For instance, the 2019 News Journal article asserts that Markevis Stanford shot the victim Oliver in 2015 (D.I. 12-1 at 65), yet Petitioner's convictions were based on Petitioner's shooting a gun at Oliver in 2014.  Presumably ignoring the difference between the 2015 date in News Journal and the fact that he was convicted of shooting at Oliver in 2014, Petitioner argues that the article demonstrates that Petitioner did not

shoot Oliver in 2014.  Petitioner is mistaken.  At most, the article merely establishes that Stanford

shot Oliver in 2015, but does not in any way establish that Petitioner did not shoot Oliver in 2014.

As for the cell site location table, the Court notes that the table was created by Petitioner's

attorney in his federal criminal proceeding and not by an expert with knowledge of how to interpret

such data, and Petitioner does not provide any independent verification of the accuracy of the cell

site location table.  Moreover, and perhaps more significantly, the information provided in the cell

site location table is not necessarily exculpatory.  The crimes forming the basis for Petitioner's

convictions occurred in New Castle, Delaware on November 7, 2014.  The cell site location table

compiled by Petitioner's defense counsel in his federal criminal proceeding – which details a series

of calls between 21:46:57 (9:46:57 p.m.) and 22:30:04 (10:30:04 p.m.) on November 7, 2014 –

contains a 17-minute gap with no call activity for his alleged cell phone between 21:50:05 (9:50:05

p.m.) and 22:07:04 (10:07:04 p.m.).  (D.I. 12-1 at 58-59).  Although Petitioner contends that the

data concerning tower 353-3 places him in the city of Wilmington, "15 to 20 minutes away from

where the crime took place," Petitioner does not provide any information concerning the location

of tower 353-3 and its proximity to the location of the crime.  (D.I. 22 at 2).  Additionally, the

location of Petitioner's crime in New Castle is nearly adjacent to the territorial boundary of the

city of Wilmington.  The police were dispatched to the shooting scene at approximately 10:00

p.m., which was within the time the identified phone was not connecting to the Wilmington tower.

(D.I. 18-2 at 4).  In short, the cell phone records and cell site location table do not establish

Petitioner's actual innocence.  Petitioner's proffer of these records also does not demonstrate that

a reasonable juror would have had a reasonable doubt about his guilt if the records had been

available during his criminal proceeding.

Without more, Petitioner's contention that the cell site location table and information about cell tower 353-3 show that he was at his father's house in Wilmington and at least fifteen to twenty minutes away from New Castle when the crime occurred does not satisfy the *Schlup/McQuiggan* actual innocence standard.  Having determined that Petitioner has not established a convincing gateway claim of actual innocence sufficient to excuse his untimely filing, the Court will dismiss the Petition as time-barred.

## III.    ALTERNATIVE RULING

Even if the Petition is not time-barred, none of the Claims warrant habeas relief.

### A.    Claim One:  Freestanding Claim of Actual Innocence

In Claim One, Petitioner contends that the formerly sealed cell phone and/or cell site location records that he received on June 20, 2018 constitute newly discovered evidence of his actual innocence.  More specifically, he asserts that he could not have been the shooter in New Castle, Delaware between 9:50 p.m. and 10:00 p.m. on November 7, 2014 because the formerly sealed records show he was in Wilmington between 9:46 p.m. and 10:30 p.m. on that date.  (D.I. 12 at 8).  Petitioner also contends that the June 23, 2019 article in the Delaware News Journal demonstrates that Markevis Stanford shot the victim, not Petitioner.  *Id*.

The United States Supreme Court has not yet resolved if a freestanding claim of actual innocence is cognizable on federal habeas review.  *See Reeves*, 897 F.3d 154, 160 n.4 (3d Cir. 2018).  Even if Petitioner's freestanding claim of innocence should be considered to be cognizable, the Third Circuit has reasoned that "[f]ailure to meet the gateway standard is sufficient to reject any hypothetical freestanding actual innocence claim."  *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 184 (3d Cir. 2017).  As discussed in Section II.B and Section III.C, Petitioner has failed to satisfy the gateway actual innocence standard for time-barred and procedurally-barred claims,

17

which means that he cannot satisfy the higher standard of proof for a hypothetical freestanding actual innocence claim.  Therefore, the Court will deny Claim One as meritless.

###    B.    Claim Two:  Due Process Violation

Next, Petitioner asserts that his "due process rights were violated when the [Delaware state] courts refused to allow him to review the evidence within the state's discovery."  (D.I. 1 at 7). "Federal habeas petitioners must satisfy a heightened pleading requirement by stating all grounds for relief available to them and setting out in summary fashion the facts underlying each claim for relief."  *Simms v. Carroll*, 432 F. Supp. 2d 443, 444 (D. Del. 2006); *see McFarland v. Scott*, 512 U.S. 849, 856 (1994).  "[B]ald assertions and conclusory allegations" do not provide a court with sufficient information to permit a proper assessment of habeas claims and a habeas court cannot speculate about claims.  *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987); *see Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) (A petitioner "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations . . . [r]ather, he must set forth facts to support his contention."); *U.S. v. Thomas*, 221 F.3d 430, 437-38 (3d Cir. 2000) ("[V]ague and conclusory allegations contained in a [habeas petition] may be disposed of without further investigation by the District Court.").

Petitioner did not present his instant due process argument in any of his proceedings in the Delaware state courts, and he has as not provided any additional information or supporting argument for Claim Two in this proceeding.  Consequently, the Court will dismiss the Claim as unreasonably vague.

To the extent Petitioner contends that the State, or the Delaware state courts, prohibited him from accessing any material within the State's possession, the argument is factually baseless. As previously discussed, the state court record contains a "Stipulation and Order" dated March 17,

2015 asserting, in relevant part, that the "State of Delaware agrees to produce to defense counsel copies of all police reports and other materials relevant to the prosecution of the above referenced criminal matter redacted only of identifying information."  (D.I. 18-4 at 87).   Because this Stipulation and Order directly contradicts Petitioner's contention, the Court will alternatively deny Claim Two as meritless.

### C.    Claim Three:  Ineffective Assistance of Counsel

In his final Claim, Petitioner contends that defense counsel provided ineffective assistance by advising him to accept a plea deal despite the fact that counsel knew about the existence of exculpatory evidence and also knew that the State's case against Petitioner was weak due to a lack of evidence.  Petitioner presented this Claim to the Superior Court in his third Rule 61 motion and that court summarily dismissed the motion as successive under Rule 61(d)(2).  *See Campbell*, 2020 WL 3002957, at *1-2.   The Delaware Supreme Court affirmed the Superior Court's summary dismissal of Petitioner's third Rule 61 motion under Rule 61(d)(2), stating that the "Superior Court did not err in concluding that [Petitioner's] third motion for postconviction relief was subject to summary dismissal because he pleaded guilty and was not convicted after trial."  *Campbell v. State*, 247 A.3d 259 (Table), 2021 WL 450993, at *1 (Del. Feb. 8, 2021).

The State contends that Claim Three is procedurally barred from federal habeas review because the Delaware state courts' application of Rule 61(d)(2) constitutes an independent and adequate state procedural rule under *Harris v. Reed*, 489 U.S. 255 (1989).   For the following reasons, the Court concurs with the State's assertion that Rule 61(d)(2) constitutes an independent and adequate state procedural rule and that the Court is procedurally barred from reviewing the instant Claim.

### 1.    Doctrine of exhaustion and procedural default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  If a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Harris*, 489 U.S. at 260-64.  Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.

### 2.    Rule 61(d)(2) is an independent and adequate state procedural rule

"A state procedural rule is independent if it is separate from the federal issue."  *Leake v. Dillman*, 594 F. App'x 756, 758 (3d Cir. 2014); *see Harris,* 489 U.S. at 261 (explaining that a state court decision is "independent" unless it "fairly appears that the state court rested its decision primarily on federal law." ).  A state procedural rule is adequate if it was "firmly established, readily ascertainable, and regularly followed" by state courts when the alleged default occurred. *See Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *Cabrera v. Barbo*, 175 F.3d 307, 313 (3d Cir. 1999).  The purpose of the adequacy requirement is notice.  *See Cabrera*, 175 F.3d at 313 (explaining that a "petitioner should be on notice of how to present his claims in the state courts if his failure to present them is to bar him from advancing them in a federal court.").

Here, the Delaware Superior Court summarily dismissed Petitioner's third Rule 61 motion (containing Claim Three) in 2020 after explicitly applying Rule 61(d)(2), and the Delaware Supreme Court affirmed that decision.  Rule 61(d)(2) provides:

> (2) *Second or subsequent postconviction motions.* A second or subsequent motion under this rule shall be summarily dismissed, **unless the movant was convicted after a trial and** the motion either:
>
> (i) pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or
>
> (ii) pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.

Del. Super. Ct. Crim. R. 61(d)(2) (2014) (emphasis added).

After reviewing the record, the Court finds that the Delaware state courts' summary dismissal of Claim Three under Rule 61(d)(2) was "independent" because the decision did not rest primarily on federal law.[6]  *See Cabrero*, 175 F.3d at 313 ("[T]he basis for the state court's rejection of the ineffective assistance of counsel claims was state court procedural default . . . Clearly, this disposition was an independent state ground."); *see also Harris,* 489 U.S. at 261 (explaining that a state court decision is "independent" unless it "fairly appears that the state court rested its decision primarily on federal law." ).  Additionally, as applied in Petitioner's case, Rule 61(d)(2) constitutes an adequate state procedural rule for procedural default purposes, because the rule was

---

[6]     The Superior Court's additional discussion of Petitioner's actual innocence argument in Claim Three constitutes an alternative holding that does not erase Petitioner's procedural default.  *See Harris*, 489 U.S. 264 n.10; *Cabrera*, 175 F.3d at 314 (explaining that the Appellate Division's reference to the merits of the ineffective assistance of counsel claim did not undermine the "conclusion that the state courts rejected Cabrera's claim on an independent and adequate state basis, as the comment at most was an alternative holding.").

"firmly established, readily ascertainable, and regularly followed" by Delaware courts when the default occurred. The version of Rule 61(d)(2) that was applied to Petitioner's case became effective in June 2014. Petitioner entered his guilty plea in October 2015, and he did not file his first Rule 61 motion until December 2016. These dates demonstrate that Petitioner had advance notice of Rule 61(d)(2)'s explicit terms when he entered a guilty plea and also when he failed to include all of his arguments in his first Rule 61 motion (and, to some extent, in his second Rule 61 motion[7]). *See Campbell v. Burris,* 515 F.3d 172, 179 (3d Cir.2008) (explaining that, when assessing adequacy, a court must "determine whether the state rule itself provides guidance regarding how the rule should be applied or whether such standards have developed in practice."). Further, a quick survey of Delaware state court decisions demonstrates that the Delaware courts have consistently applied the June 2014 version of Rule 61(d)(2) to summarily dismiss successive Rule 61 motions in cases where, as here, the defendant entered a guilty plea. *See, e.g., Bible v. State,* 105 A.3d 988 (Table), 2014 WL 70110822, at *2 (Del. Dec. 3, 2014); *Brewer v. State,* 119 A.3d 42 (Table), 2015 WL 4606541, at *2 (Del. July 30, 2015); *Collins v. State,* 119 A.3d 42 (Table), 2015 WL 4717524, at *2 (Del. Aug. 6, 2015); *Shah v. State,* 130 A.3d 932 (Table), 2015 WL 9436813, at *2 (Del. Dec. 22, 2015); *Norwood v. State,* 171 A.3d 139 (Table), 2017 WL 4001838, at *1 (Del. Sept. 11, 2017); *Anderson v. State,* 183 A.3d 704 (Table), 2018 WL 1341714, at *1 (Del. Mar. 14, 2018).

### 3.    Cause, prejudice, and miscarriage of justice exceptions are inapplicable

By explicitly applying the independent and adequate procedural bar of Rule 61(d)(2), the Delaware state courts articulated a "plain statement" under *Harris* that their decisions rested on state law grounds. Thus, Claim Three is procedurally defaulted, and the Court cannot review its

---

[7]    *See infra* at pp. 23-25.

merits absent a showing of cause for, and prejudice resulting from, Petitioner's default, or upon a showing that a miscarriage of justice will occur if the Claim is not reviewed.

To demonstrate cause for a procedural default, Petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held that the absence of counsel or the inadequate assistance of counsel during an initial-review state collateral proceeding may, in very limited circumstances, establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *Id*. at 16-17. The *Martinez* rule will only excuse a petitioner's default if the underlying ineffective assistance of trial counsel claim is substantial and the petitioner was prejudiced. *Id*.

To show that a claim is "substantial" under *Martinez*, a petitioner must point to evidence demonstrating that the underlying ineffectiveness claim has "some merit." *Martinez*, 566 U.S. at 14. That is, the petitioner must submit at least ***some*** evidence satisfying the two-part standard under *Strickland v. Washington* tending to show that (a) trial counsel performed deficiently in handling some aspect of pretrial or trial duties and (b) the deficient performance prejudiced the defense, in that there is a reasonable probability there would have been a different outcome at trial in the absence of counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 688, 695-96 (1984). In the context of a guilty plea, a petitioner establishes prejudice by demonstrating a reasonable probability that, but for counsel's error, he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Finally, although the Court is "guided by the two-part *Strickland* analysis" when making the threshold "some merit/substantiality" determination, the Court must "remain[] mindful that the 'substantiality' inquiry does not require full consideration of the factual or legal bases adduced in support of the

claims." *Preston v. Sup't Graterford SCI*, 902 F.3d 365, 377 (3d Cir. 2018) (cleaned up); *see also Bey v. Sup't Greene SCI*, 856 F.3d 230, 238 (3d Cir. 2017) ("[W]hether [an ineffective assistance of counsel] claim is substantial is a threshold inquiry that does not require full consideration of the factual or legal bases adduced in support of the claims.") (cleaned up).

Here, Petitioner contends that he could not have complied with Rule 61(d)(2)'s prohibition on successive motions for postconviction relief by including the instant ineffective assistance of counsel allegation at the time of his default – presumably, when he failed to include the Claim in his first Rule 61 motion – because the alleged "exculpatory" cell phone and cell site location records were sealed until March 2018. The Court notes that, although Petitioner filed his second Rule 61 motion on July 20, 2018 – which was after he received the formerly sealed cell phone and cell site location records – Petitioner's second Rule 61 motion did not mention the cell phone records or assert that defense counsel provided ineffective assistance by failing to investigate the existence of those records. Nevertheless, as Petitioner requested, and was denied, the appointment of counsel to aid in the preparation of his first and second Rule 61 motions, (D.I. 18-15 at 13, Entry Nos. 74 & 78), the Court will consider whether the absence of representation during Petitioner's first and second[8] Rule 61 proceedings can excuse Petitioner's default under the rule established in *Martinez*.

---

[8]   The *Martinez* rule is limited to determining whether the absence of counsel or ineffective assistance of counsel in an initial-review collateral proceeding can constitute cause for the procedural default of an ineffective assistance of trial counsel claim. Although Petitioner's second Rule 61 motion was not his initial-review collateral proceeding, the fact that the cell phone and cell site records were not unsealed until June 2018 could arguably transform his second Rule 61 motion into the equivalent of an initial-collateral proceeding for the purpose of an ineffective assistance of counsel claim premised on the failure to discover those records. *See, e.g., Trevino v. Thaler*, 569 U.S. 413, 425 (2013) (explaining that "initial collateral review proceeding" was the initial proceeding with respect to the ineffective assistance of counsel claim.).

The Court's threshold inquiry is to determine whether the ineffective assistance of trial counsel argument in Claim Three is substantial.  The Court concludes that Claim Three's ineffective assistance of counsel argument is not substantial, because Petitioner cannot demonstrate that he was prejudiced by defense counsel's guidance and counsel's failure to uncover the information in the cell phone records that were sealed until March 2018.  First, Petitioner derived a considerable benefit by pleading guilty.  If Petitioner had been found guilty of all charges after a trial, he faced a possible maximum sentence of 50 years.  *See Campbell*, 2017 WL 590317, at *2.  Yet, in exchange for entering a guilty plea, the State agreed to cap its Level V incarceration recommendation at 15 years or to recommend 25 years of Level V incarceration suspended after 15 years.  *Id*.  The Superior Court ultimately sentenced Petitioner to twelve years of incarceration followed by decreasing levels of supervision.  (D.I. 18-6 at 26; D.I. 19 at 5).

Second, Petitioner's contention that defense counsel was ineffective for encouraging him to plead guilty when there was very little evidence against him (D.I. 12 at 11) is contradicted by the record.  Petitioner himself admitted his involvement in the shooting to the police during their investigation.  After he was advised of his *Miranda* rights, Petitioner informed Detective Garcia that he agreed to help Markevis Stanford on November 7, 2014.  (D.I. 18-2 at 7).  Petitioner admitted that he picked up Stanford and an unknown black male in the city of Wilmington in his black Ford Explorer.  (D.I. 18-2 at 8).  He described how the unknown black male gave him a 9 mm handgun and stated that he followed Stanford's directions and drove to the scene of the shooting.  (D.I. 18-2 at 8).  Petitioner told Detective Garcia that, after the shooting concluded, he drove Stanford and the unknown black male to the city of Wilmington and dropped them off.  (*Id.*).  In addition, a day after the shooting, Petition was found driving a car matching the description of the vehicle used to transport the shooters to and from the scene of the shooting.  (*Id.*).

After viewing Petitioner's post-arrest admissions in conjunction with the considerable benefit Petitioner derived from pleading guilty, the Court concludes that Petitioner has failed to demonstrate a reasonable probability that he would not have pled guilty but for defense counsel's guidance and failure to uncover the cell phone records.  Thus, the *Martinez* rule cannot be used to excuse Petitioner's default of Claim Three.

In the absence of cause, the Court will not address the issue of prejudice.  Additionally, to the extent Petitioner attempts to trigger the miscarriage of justice exception to the procedural default doctrine, the attempt is unavailing.  A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496.  Actual innocence means factual innocence, not legal insufficiency.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998).  In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).  Once again, Petitioner contends that the formerly sealed cell phone records and the cell site location table provide him with an alibi, and no reasonable juror would have convicted him if he had possessed these records during his trial.  The Court has already concluded that these records do not constitute "new reliable evidence" of Petitioner's actual innocence.  *See supra* at Section II.B.2.  Thus, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default of Claim Three.

Accordingly, the Court will deny Claim Three as procedurally barred from habeas review.

### D.     <u>Pending Motion</u>

Petitioner filed a Motion for Default on November 13, 2021, arguing that the State failed to file an Answer by October 4, 2021, the deadline under the local rules.  (D.I. 13 at 1).  The Court,

however, did not Order the State to respond to the Petition until January 11, 2022 and the State filed its Answer in accordance with that Order and subsequent extension of time.  (*See* D.I. 15; D.I. 17; D.I. 19).  Therefore, the Court will deny the Motion as meritless.

## IV.   <u>CERTIFICATE OF APPEALABILITY</u>

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable.  Therefore, the Court will not issue a certificate of appealability.

## V.   <u>CONCLUSION</u>

For the reasons stated, the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability.   An appropriate Order shall issue.